**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**ROBERT H. ROBINSON, JR.**
**JUDGE**

**1 The Circle, Suite 2**
**GEORGETOWN, DE 19947**
**TELEPHONE (302) 856-5264**

May 27, 2021

Matthew J. Rifino, Esq.
Shannon D. Humiston, Esq.
Daniel M. Silver, Esquire
McCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King St., Suite 800
Wilmington, DE 19801

Colin M. Shalk, Esq.
Kenneth M. Doss, Esq.
CASARINO CHRISTMAN SHALK
RANSOM & DOSS, P.A.
1007 North Orange Street, Suite 1100
P.O. Box 1276
Wilmington, Delaware 19899

Re:  *Salt Meadows Homeowners Association, Inc., v. Zonko Builders, Inc.*
C.A. No. 17C-05-018 RHR

Dear Counsel,

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment. Because the reasonableness of the costs incurred to date is in dispute, the motion is DENIED.

Defendant, Zonko Builders, Inc. ("Zonko"), a general contractor, built Salt Meadows Townhomes Condominium, a condominium consisting of twenty units in five buildings, in Fenwick Island, Delaware. The Plaintiffs are the owners of the twenty units and the homeowners' association (collectively, "Salt Meadows"). In 2016, several homeowners began noticing water damage in their units. An engineer hired by Salt Meadows determined that construction deficiencies had caused

significant water infiltration. This litigation ensued.  Salt Meadows' complaint alleges four grounds for recovery: negligent construction, breach of contract, breach of express warranty, and breach of implied warranty. Repairs to correct the construction deficiencies and to correct the damage caused by those deficiencies are ongoing. As of December 2020, none of the units had been fully repaired, and a few units had not undergone any repairs.[1]

Salt Meadows initially filed a Motion for Partial Summary Judgment asking for damages of no less than three million dollars. This Court heard argument on December 11, 2020. The Court found that Salt Meadows had proven Zonko's negligence—largely based on the deposition testimony of Zonko's own witnesses—but it did not reach a decision on damages. The Court observed at the hearing that the three-million-dollar figure was based on Zonko's expert's low-end estimate, but, because a jury could choose to accept or reject that expert's opinion, that amount was not appropriate for summary judgment.[2] The Court ordered post-argument briefing to clarify the arguments as to damages.

In its post-argument briefing, Salt Meadows initially asked for not less than $2,222,088.69, which represented the total amount that it has paid to date for the

---

[1] Transcript of Dec. 11, 2020 hearing (Trans.) pp. 18-19.
[2] Trans. pp. 23-24.

repairs, with the final amount to be determined at trial.[3] To support its claim, Salt Meadows has submitted over one thousand pages of invoices dating back to 2016. These invoices detail the work performed, the hours spent, and the supplies used to repair each of the units worked on through August 2020.

Zonko responded and argued summary judgment is not appropriate on this record. Zonko claims that the invoices actually muddy the damages waters. Zonko points out that some of the invoices do not specify the unit numbers where the work was performed and that certain invoices appear to cover multiple units. Zonko also observes that while the various experts retained by both parties estimated the costs of repairing each unit, the invoices demonstrate that the costs of the repairs on the units vary widely, with some unit repairs costing more, and others less, than what the parties' experts had estimated.

Summary judgment is appropriate when there is no dispute of fact and judgment can be ordered as a matter of law.[4] Summary judgment will not be granted

---

[3] This sum represents $2,206.067.16 payable to the Salt Meadows Homeowners Association, Inc., as well as $15,725.60 incurred by the individual unit owner of unit 40112 and $295.93 incurred by the individual unit owner of unit 40149. However, in its Post-Hearing Reply Brief, Salt Meadows withdrew its request for a portion of the money claimed by the owner of Unit 40112 in the amount $1,158.33 to avoid raising a question of fact that would complicate its demand for summary judgment, while reserving the right to ask for that amount at trial. The revised total sought in the Post-Hearing Reply Brief is now $2,220,930.36.

[4] *Altenbaugh v. Benchmark Builders, Inc.,* 2021 WL 1215828, at *2 (Del. Super. Ct. Mar. 26, 2021).

"if, upon examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances."[5]

Salt Meadows points to the deposition testimony of Zonko's expert, Jason Boyd, a professional engineer who inspected several of the units and who reviewed invoices for repairs to those units, to claim that the costs incurred to date are reasonable. However, Mr. Boyd's testimony is not as supportive of Salt Meadows' position as Salt Meadows claims it is. Mr. Boyd's deposition was taken in June 2020. But some of the invoices submitted by Salt Meadows are dated after June 2020, so Mr. Boyd's opinion as to the reasonableness of at least some of the invoices is unknown. Also, much of the questioning in Mr. Boyd's deposition focused on the question of negligence, not the actual amount of damages and the reasonableness of those damages.

Mr. Boyd noted at various times in his deposition that he was unsure whether he had reviewed all the invoices and was, at times, unwilling to offer a firm opinion as to the reasonableness of the costs.[6] Although at times Mr. Boyd testified that he thought certain work and costs were necessary and reasonable, he never conceded that all the expenses incurred to date were reasonable as a matter of law or fact:

---

[5] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-469 (Del. 1962).
[6] Deposition of Jason Boyd, P.E. dated June 18, 2020 (Boyd Dep.), pp. 38-39; 41-42; 65-66; 82-84; 90; 91-92; and 141-142.

There's tons of invoices and some of which are better described, a better description of what actually occurred, so I'm not sure I can answer that question 100 percent. But a lot of the hourly rates that I saw and a lot of the work that was done was reasonable in time and cost, but I can't say that I've evaluated everything because the invoices weren't entirely clear as to the scope of everything that was done.[7]

He confirmed that the scope and cost of repairs for two units—but only for two units out of the twenty—were reasonable.[8] But, Mr. Boyd also stated:

What I'm finding right now is that it is unclear the scope that was completed and the costs. I can tell you that the document you just, the document you put up previously showing the estimated cost for repair of [$]482,000 for these condos for the water intrusion damage that I saw is significantly high for industry standard.[9]

He further noted he would be filing further reports regarding the reasonableness of costs.[10] Although Mr. Boyd is just one of several experts retained by the parties in this fairly complicated construction dispute, the question of reasonableness and appropriateness of the costs incurred to date is disputed, especially in light of the ongoing nature of the repairs. Also, questions remain as to whether issues such as roof repairs and mold remediation were necessary, and therefore there is a question as to whether Zonko is responsible for those costs, as well.

---

[7] Boyd Dep., p. 42.
[8] Boyd Dep., 43.
[9] Boyd Dep., 68.
[10] Boyd Dep., p. 84.

In sum, although Zonko ultimately may be responsible for a substantial portion of the damages sought by Salt Meadows in its motion, Salt Meadows is not entitled to summary judgment at this time because it cannot point to any evidence that proves all the costs incurred to date are reasonable.

For the foregoing reasons, the Plaintiffs' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

Sincerely,

*/s/ Robert H. Robinson, Jr.*

Robert H. Robinson, Jr., Judge

cc: All counsel of record (by File & ServeXpress)